UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL ANTHONY BROWN,

                        Plaintiff,

        v.

ANDREW SAUL,
Commissioner of Social Security,

                       Defendant.
_____

<u>DECISION AND ORDER</u>

19-CV-0356L

     Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). This action is brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

     On April 5, 2016, plaintiff, then forty-one years old, filed an application for a period of disability and disability insurance benefits, alleging an inability to work since June 2, 2015. (Administrative Transcript, Dkt. #7 at 10). His application was initially denied. Plaintiff requested a hearing, which was conducted April 5, 2018 via videoconference before Administrative Law Judge ("ALJ") Erik Eklund. On April 20, 2018, the ALJ issued an unfavorable decision. (Dkt. #7 at 10-21). That decision became the final decision of the Commissioner when the Appeals Council denied review on January 14, 2019. (Dkt. #7 at 1-3). Plaintiff now appeals.

     The plaintiff has moved for remand of the matter for further proceedings (Dkt. #15), and the Commissioner has cross moved (Dkt. #23) for judgment on the pleadings pursuant to Fed. R.

Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the decision appealed-from is affirmed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records throughout the relevant period, particularly his treatment records for obesity (6'1" in height, and ranging between 410-438 pounds in weight, according to his medical records), status post meniscus repair of the right knee, osteoarthritis of the right leg with patellofemoral chondromalacia (degeneration of cartilage in the kneecap), lumbar degenerative disc disease with S1 radiculopathy (nerve compression), retrolisthesis (posterior vertebral slippage) at S1, mild to moderate spondylitic spurring (osteoarthritis) at L3-S1, moderate spurring at T1-L2, obstructive sleep apnea, recurring leg edema, depression, anxiety, and a learning disorder, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #7 at 12).

After summarizing the medical evidence of record, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: cannot climb ladders, ropes or scaffolds, cannot crawl, can no more than frequently balance, and

can no more than occasionally stoop, crouch,[1] kneel, or climb ramps and stairs. Plaintiff is precluded from twisting, and is limited to no more than occasional operation of foot controls. He must avoid excessive vibration, moving machinery, and unprotected heights. He is limited to simple, unskilled work. (Dkt. #7 at 15).

Because plaintiff's RFC prevented him from returning to his past relevant work as a machine operator (performed at the light exertional level), the ALJ solicited testimony by vocational expert Warren D. Maxim to determine whether there were positions in the economy that plaintiff could perform. When given the ALJ's RFC finding as a hypothetical question, Mr. Maxim testified that such an individual could perform the representative sedentary unskilled positions of surveillance system monitor, document preparer, and order clerk. (Dkt. #7 at 20).

## I.    Listing 1.04(A)

First, plaintiff argues that the ALJ erred when he found that plaintiff did not meet the requirements of Listing 1.04(A) for spinal impairments. In order to be found disabled under Listing 1.04(A), a claimant must "meet all five criteria included in that Listing . . . simultaneously and for the necessary duration." *Morales v. Berryhill*, 2019 U.S. Dist. LEXIS 36981 at *14 (W.D.N.Y. 2019).

The ALJ considered the Listing, but found that the record did not contain sufficient evidence of the required elements of nerve root compression, limitation of spinal motion, motor loss (atrophy with associated muscle weakness), sensory or reflex loss, and positive straight leg raising tests. (Dkt. #7 at 13).

---

[1] The RFC description in the ALJ's decision appears to contain a typographical error, making the contrary findings that plaintiff can "never" crawl, and that he can "occasionally" crawl, while saying nothing of plaintiff's ability to crouch. Comparing the RFC description with the ALJ's hypothetical question to the vocational expert at the hearing, it is clear that the ALJ's actual RFC finding was that plaintiff can "never" crawl, and can "occasionally . . . crouch."

The ALJ's summary of the evidence included consideration of plaintiff's spinal MRI and objective testing showing limited flexion on some occasions, but full strength and normal gait. (Dkt. #7 at 17). While plaintiff points to sporadic findings of difficulty in squatting or walking on heels and toes, diminished deep tendon reflexes in his knees and ankles, and a single positive straight leg raising test, plaintiff's medical records which include objective assessments of his muscle tone and strength consistently show no deficits, assessments of his reflexes were inconsistent, and all of his other straight leg raising tests during the relevant period were negative. (Dkt. #7 at 17, 346-78, 387, 389-424). Because the record does not establish that plaintiff ever simultaneously met all of the requirements of the Listing, let alone that he did so for a 12-month duration, the ALJ's finding that plaintiff failed to satisfy the elements of Listing 1.04(A) was supported by substantial evidence.

## II.     Treating Physician Opinion

In assessing the medical opinions of record, the ALJ gave "great" weight to the opinions of reviewing physician Dr. J. Ordman, consulting physician Hongbiao Liu, and consulting psychologist Dr. Kristina Luna, but "little" weight to portions of the opinion of plaintiff's primary care provider, Dr. David Stahl.

Specifically, while the ALJ adopted many of the exertional limitations indicated by Dr. Stahl (e.g., lifting, twisting, climbing, hazards) as consistent with the medical record, he declined to credit those portions of Dr. Stahl's opinion which stated that plaintiff could sit for no more than 20 minutes at a time, that he could never stoop or crouch, and that his back pain would cause him to miss more than 3 days of work per month. (Dkt. #7 at 527-30). The ALJ argued that there was "no objective evidence to support these extreme limitations," and declined to include them in his RFC finding. (Dkt. #7 at 19). Plaintiff argues that this was an error requiring remand.

4

"[T]he treating physician rule generally requires deference to the medical opinion of a claimant's treating physician," although an ALJ need not afford controlling weight to one that is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citations omitted). An ALJ who does not accord controlling weight to the medical opinion of a treating physician must consider various factors, including "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; [and] (iv) whether the opinion is from a specialist." *Id*., 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)). After considering these factors, the ALJ must "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Id*. at 33.

Here, the ALJ made no clear attempt to discuss the factors relevant to the treating physician rule. Failure to do so is typically "a procedural error warranting remand unless a 'searching review' of the record assures the reviewing court that the substance of the treating physician rule is not traversed." *Guerra v. Saul*, 2019 U.S. App. LEXIS 19842 at *2-*3 (2d Cir. 2019) (citing *Estrella v. Berryhill*, 925 F.3d 90 at 95 (2d Cir. 2019) and *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)).

Here, a "searching review" of the record convincingly demonstrates that the ALJ's finding – that there was "no evidence" to support the more dramatic postural and attendance limitations described by Dr. Stahl – was not factually erroneous, and that his decision not to credit those portions of Dr. Stahl's opinion was well-supported by substantial evidence.

Initially, nothing in Dr. Stahl's treatment notes for plaintiff supports an inability to occasionally crouch or stoop. The majority of his progress notes focused on treatment for sleep

apnea and sexual matters (and later on, management of plaintiff's lower back pain with prescription medications and injections), and reflected no concerns or complaints that would have logically prohibited sustained sitting or occasional crouching or stooping. *See* Dkt. #7 at 315-28, 443-88, 531-680 (plaintiff's treatment notes with Dr. Stahl, generally expressing no postural or exertional concerns). Nor do any of the objective assessments or medical opinions by treating or examining physicians support an inability to sit, or to occasionally crouch or stoop. *See* 346-78, 389 (examination records from Dr. Eugene Gosy for back and knee pain approximately every 3-6 weeks from June 2014 through November 2015, noting some limited lumbar flexion and diminished deep tendon reflexes in knees and ankles, but negative straight leg raising tests and full muscle strength and tone in all muscle groups, and reporting that until June 2015 plaintiff was continuing to work full-time, 65-70 hours per week, with restrictions to no "repetitive bending or twisting," and no lifting greater than 20-25 pounds); 385-88 (consultative examination by Dr. Liu, noting full cervical flexion, moderately decreased lumbar flexion, full range of motion in knees and ankles, and full strength in all extremities, and opining "mild to moderate" limitations in walking, bending and kneeling).

Furthermore, the record contains no evidence whatsoever that any of plaintiff's impairments would cause him to be absent from work. To the contrary, plaintiff testified (and his self-reports to Dr. Gosy reflect) that up until his termination in June 2015, which was precipitated by a harassment complaint and not by any physical or psychological limitations, performance problems, or attendance issues, plaintiff was regularly working up to 7 days per week, for a total of 65-70 hours per week, operating a labeling machine at a factory. (Dkt. #7 at 35-36). Plaintiff's treatment records following his termination show no significant change in his diagnoses or treatment, nor any increase in the severity of his symptoms, that might support a finding that

6

plaintiff's work-related limitations increased (or that his ability to attend work otherwise decreased) thereafter.

Plaintiff reported at the time of his September 21, 2015 consultative psychological and internal medicine examinations that he showered, dressed, provided child care and engaged in simple cooking tasks every day, and that he shopped, cleaned and did laundry once a week. (Dkt. #7 at 381, 386). Not only does the record indicate that plaintiff maintained a daily routine at home after he stopped working, but there is no evidence that plaintiff's symptoms ever caused him to miss any of his regular medical appointments due to his symptoms.

While plaintiff argues that the ALJ failed to sufficiently explain his rejection of Dr. Stahl's opinion and argues that the ALJ should have recontacted Dr. Stahl if portions of the opinion appeared baseless, plaintiff points to no evidence of record that actually supports the limitations that Dr. Stahl described and that the ALJ declined to adopt, nor does plaintiff identify any obvious gaps in the record. *See generally Zawistowski v. Commissioner*, 2020 U.S. Dist. LEXIS 58802 at *12 (an ALJ's duty to recontact "arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings, not when the treating physician's opinion is inconsistent with . . . the rest of the record") (quoting *Guillen v. Berryhill*, 697 Fed. Appx. 107, 108 (2d Cir. 2017)).

The Court therefore concludes that notwithstanding the ALJ's procedural error in failing to adequately apply the treating physician rule to Dr. Stahl's opinion, the substance and goals of the rule were not traversed, the ALJ's findings were well-supported by substantial evidence of record, and remand is not required.

Furthermore, even assuming *arguendo* that the ALJ erred in declining to fully credit Dr. Stahl's opinion that plaintiff required a sit/stand option and could never stoop or crouch, such error was harmless. Vocational experts in this circuit have consistently testified that all three of the

positions identified by the vocational expert in this case – surveillance system monitor, document preparer, and order clerk – can be performed by individuals with those precise limitations. *See Lisa R. v. Commissioner*, 2020 U.S. Dist. LEXIS 5796 at *24-*25 (N.D.N.Y. 2020) (assuming *arguendo* that ALJ's failure to include sit/stand option was error, such error was harmless where the positions identified by the VE, including surveillance system monitor, have been described by VE testimony in other cases in the Second Circuit as being compatible with a sit/stand option). *See also Mosley v. Commissioner*, 2019 U.S. Dist. LEXIS 100206 at *10-*11 (W.D.N.Y. 2019) (document preparer and order clerk positions allow changing positions at will); *Nieves v. Commissioner*, 2019 U.S. Dist. LEXIS 135785 at *21 (S.D.N.Y. 2019) (document preparer position allows changing positions at will); *Daniels v. Berryhill*, 270 F. Supp. 3d 764, 777 (S.D.N.Y. 2017) (surveillance system monitor position requires no stooping); *Trancynger v. Commissioner*, 269 F. Supp. 3d 106, 112 (S.D.N.Y. 2017) (surveillance system monitor position allows changing positions at will, and requires no stooping or crouching); *Hayes v. Berryhill*, 2017 U.S. Dist. LEXIS 164122 at *13 (S.D.N.Y. 2017) (document preparer and order clerk positions both require no stooping or crouching); *Hawkey v. Commissioner*, 2016 U.S. Dist. LEXIS 160625 at *19 (N.D.N.Y. 2016) (surveillance system monitor and document preparer positions both require no stooping or crouching).

Because plaintiff could perform the positions the vocational expert identified regardless of whether Dr. Stahl's opinion concerning his ability to sit, crouch and/or stoop was given controlling weight, any error committed by the ALJ in declining to include such limitations in his RFC finding was harmless, and "remand to consider that issue further would serve no useful purpose." *Yeomas v. Berryhill*, 305 F. Supp. 3d 464, 467-68 (W.D.N.Y. 2018).

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #15) is denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #23) is granted. The ALJ's decision is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        June 1, 2020.

9